UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Lavar D. Brown, | ) | C/A No. 5:13-2499-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the Commissioner's findings are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

    A.  Procedural History

    In March 2011, Plaintiff protectively applied for DIB and SSI under Titles II and XVI of the Act. Tr. 126-42. He alleged a disability onset date of August 18, 2008. Tr. 126, 135. Plaintiff's applications were denied initially on July 29, 2011, Tr. 52-55, and upon reconsideration on October 11, 2011, Tr. 56-59. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 76-78. The administrative hearing was held on May 7, 2012, Tr. 20-51, and on May 21, 2012, the ALJ issued an unfavorable decision, finding Plaintiff

not disabled within the meaning of the Act, Tr. 6-19. The Appeals Council denied Plaintiff's request for review. Tr. 1-4. Thus, the ALJ's decision became final and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on September 13, 2013. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born on August 5, 1964, and was 47 years old at the time of the ALJ's decision. Tr. 167. He completed high school, and has past relevant work ("PRW") as a warehouse worker, truck driver, kitchen helper, construction laborer, and car washer. Tr. 184. Plaintiff claimed he became disabled due to limitations caused by lower back injury, hip; right leg pain; and sciatic nerve problems. Tr. 183.

C.    The Administrative Proceedings

1.    Plaintiff's Hearing Testimony

Plaintiff testified that he completed twelfth grade and obtained a high school diploma. Tr. 23. While in high school he played sports and one of his favorite hobbies was weight lifting. Tr. 26. Plaintiff stated he was divorced and had four grown children and three grandchildren. Tr. 23. Plaintiff stated that he owned a townhouse but because it was two-story he lived with his mother who had a single-level home. Tr. 24. Plaintiff testified that he served in the U.S. Navy from 1984 to 1988 as an aviation administrator and as a plane captain and was honorably discharged. Tr. 25-26. Plaintiff stated that he last worked for Goodwill Industries as a truck driver, and before that he worked temporarily as a restaurant dishwasher, and doing construction/warehouse work "with a lot of lifting, forklift operation and loading and unloading." Tr. 26. Plaintiff testified that he had an on-the-job accident on August 18, 2008, involving a ruptured disk from trying to lift an object. Tr. 27. Plaintiff stated that he tried therapy and an epidural injection but it did not work so he had an operation on his back in October 2008. *Id.* Plaintiff stated the operation was

2

not very successful because he continued to have tingling in his feet and pain down his right leg and in his back. Tr. 27-28. After his operation he tried to return to work at Goodwill Industries on light duty sitting and helping with the clothing as it came in or at the front of the store as a greeter. Tr. 28. Plaintiff testified that he was unable to do that work because he could not sit or stand for too long. *Id.* His attempt to work lasted about two or three weeks. *Id.* Plaintiff testified he had a second operation in September 2009 to fuse his spine but he is still having pain. Tr. 29-30. Plaintiff stated he has pain in his lower back, down his legs, and around to his ribs. Tr. 30. Plaintiff testified that after his second operation he was sent to intense physical therapy that did not help too much so he was given a TENS unit[1] that gives him "maybe a little relief for about 10 or 15 minutes, and then [he will] be right back in the same place." *Id.* Plaintiff stated he uses the TENS unit two or three times a week along with cold compresses on his back. Tr. 31. He said that and lying on his side with a pillow between his legs gives him the most relief. *Id.* Plaintiff testified that he has gotten worse since his second operation because he no longer drives, he is unable to attend church like he wants to, it is painful to get in and out of the car, he is unable to do his laundry, and it is difficult for him to bend. Tr. 32. Plaintiff stated he can only lift small things "like a little milk jug or something like that." *Id.* Plaintiff testified that he has good days and bad days and some days he walks with a cane. Tr. 33. On bad days he sits in a recliner with a cold pack on his back. *Id.* Plaintiff testified he can sit for 10 to 15 minutes and then he needs to "stand up for a little bit." Tr. 34.   Plaintiff stated that his medication does not "do too much for [him]" to alleviate the pain and he sometimes has to take "two or three of them at one time" because he is in so much pain. Tr. 35.  Plaintiff testified that the Naproxen and Tramadol makes

---

[1] TENS, or transcutaneous electrical nerve stimulation, is a back pain treatment that uses low voltage electric current to relieve pain. TENS is typically done with a TENS unit, a small battery-operated device. The device can be hooked to a belt and is connected to two electrodes. The electrodes carry an electric current from the TENS machine to the skin. *See* http://www.webmd.com/back-pain/guide/tens-for-back-pain (last visited Nov. 3, 2014).

him "dizzy, a little sleepy, a little nauseated." *Id.* Plaintiff stated he was being treated by the Veterans Administration and he would "get a little run around with the doctor sometimes . . . to try to do something about the medication." Tr. 36. Plaintiff stated he is unable to cook, clean house, play football, hold his grandchild, play with his grandchildren, or lift weights. *Id.* Plaintiff stated that a third operation has been suggested, but "after that second one, that's probably it." Tr. 37. Plaintiff stated he was "getting a lot of running around with this one, now" and he keeps asking to see a neurologist and trying to get water therapy he is supposed to have. *Id.*

In response to a question asked by the ALJ about the job at Goodwill, Plaintiff stated it was difficult to stand or walk to get buggies, and he "would sit down for a little bit." Tr. 37. Plaintiff described pain in his pelvic area where bone was removed. *Id.* Plaintiff stated that he does not do physical therapy other than exercises that he does on his own, and has not been provided water therapy or pain management. Tr. 38. Plaintiff testified to being frustrated to the point "they thought [he] had to have anger management for a while there." Tr. 39.  Plaintiff stated that he believed his sciatic nerve was damaged in his last operation and is causing problems with his knee. Tr. 40-41. Plaintiff stated for most of the day he is in the recliner, and he tries to "do a little walking." Tr. 41.

### 2.     Vocational Expert ("VE") Testimony

VE Mary Cornelius testified at Plaintiff's administrative hearing, and described Plaintiff's past work as a delivery driver as medium, semiskilled, medium with a specific vocational preparation ("SVP") of three. Tr. 42. She described Plaintiff's job as a car washer as medium, unskilled, with SVP of one; his job as construction worker as heavy, semiskilled, SVP of four; the job of kitchen helper as medium, unskilled, SVP of two; the job of greeter or lobby attendant as light, unskilled, SVP of two; and the job of warehouse worker as medium, unskilled, SVP of two. *Id.*   The ALJ asked the VE if a person of Plaintiff's age, education, and work

experience who was able to do light work, but could not climb ladders ropes or scaffolds; could occasionally climb ramps or stairs; occasionally stoop, crouch or crawl; and frequently kneel or reach be able to perform Plaintiff's past work. Tr. 42-43.  The VE responded that such an individual could perform Plaintiff's past work as greeter or lobby attendant, and identified other jobs available in the local and national economy of routing clerk, proof reader, and mail sorter that the individual could perform. Tr. 43. When asked, the VE opined that those jobs would not be affected if a sit/stand option was added to the hypothetical. *Id.* The ALJ asked the VE to assume a person with Plaintiff's age, education, and work experience able to do sedentary work with the following limitations: "No climbing ladders, ropes, or scaffolds. Occasional climbing ramps or stairs. Occasional stooping, crouching, kneeling, and crawling. Frequent reaching." Tr. 43-44. The ALJ asked if such a person would be able to do Plaintiff's past work, and the VE responded "[n]o past relevant work." Tr. 44. The VE identified the jobs of ticket checker, order clerk, and information clerk that would be available. *Id.* The ALJ added in the sedentary hypothetical that the individual would need a sit/stand option and clarified that in both hypotheticals the sit/stand option meant "allowing the person to sit or stand alternatively at will, provided the person is not off-task more than 10 percent of the workday." *Id.* The VE responded that modification did not change his response. Tr. 45. The ALJ asked if there were any jobs if the individual, due to a combination of medical conditions were to be off-task for more than an hour a day in addition to regularly scheduled breaks. *Id.* The VE responded that if it were greater than an hour a day it would preclude all work. *Id.* The ALJ asked if there would be jobs available if the person were to miss more than two days of work a month because of medical conditions, and the VE responded that limitation would preclude all work. *Id.*

Plaintiff's attorney questioned the VE on Plaintiff's job as a greeter/lobby attendant, and upon further questioning of the Plaintiff by the ALJ, the ALJ noted that job would be "an

unsuccessful work attempt." Tr. 45-46. Plaintiff's attorney resumed questioning of the VE and asked if all work would be eliminated if the individual "is unable to bend and squat infrequently. That is, no more than one percent of the workday." Tr. 47. The VE responded that would not eliminate all jobs because all jobs do "not necessarily require bending or squatting." *Id.* The attorney asked if an individual could perform the jobs if "in a recliner with an ice pack on their back for one hour every workday?" The VE responded "no" and noted "[t]hey cannot have a recliner at all." Tr. 48. The attorney asked if the sit/stand option would reduce the number of jobs available in South Carolina and in the nation. *Id.* The VE responded that "there may be some that reduce, but over all, it would not erode that category." Tr. 49. The attorney asked if being absent from the work station more than ten percent of the productive time would eliminate the jobs, and the VE responded that if removal from the work site interfered with the job being completed then that was correct. *Id.*

The ALJ asked the VE if his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and the VE responded in the affirmative except for the sit/stand option which was based on professional experience. Tr. 49-50.

II.  Discussion

A.      The ALJ's Findings

In his May 21, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2.      The claimant has not engaged in substantial gainful activity since August 18, 2008, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: disorder of the back and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404-1567(a) and 416.967(a) except he is limited to occasional stooping, crouching, kneeling, crawling, and climbing ramps and stairs. He cannot climb ladders, ropes, or scaffolds and is limited to frequent reaching. Further, the claimant must be allowed to sit or stand alternatively at will, but will not be off task more than 10% of the workday.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on August 5, 1964, and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 11-18.

B.  Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is

---

[4]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner  made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*,  *Richardson v. Perales*, 402 U.S.

389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

1.     ALJ's Consideration of Plaintiff's Impairments

Plaintiff's initial allegation of error is that the ALJ "failed to consider all of Plaintiff's impairments and their combined effect on his ability to sustain gainful employment." Pl.'s Br. 4, ECF No. 17. The Commissioner asserts that the ALJ properly considered all of Plaintiff's impairments and their combined effect. Def.'s Br. 9, ECF No. 18.

Step Two of the sequential evaluation process requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c), 416.920(c). If an impairment is only "a slight abnormality" that causes only "minimal effect on the individual" and does not interfere with the individual's ability to work, irrespective of age, education, or work experience, the impairment is considered non-severe. *Evan v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1981). "[T]he mere presence of a physical disorder is not necessarily disabling; rather there 'must be a showing of related functional loss.' If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Thornsberry v. Astrue*, No. 4:08-4075-HMH-TER, 2010 WL 146483, at *21 (D.S.C. Jan. 12, 2010) (internal citations omitted).

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Lemacks v. Astrue*, No. 8:07-2438-RBH-BHH, 2008 WL 2510087 (D.S.C. May 29, 2008), *aff'd*, 2008 WL 2510040 (D.S.C. June 18, 2008). Even if the claimant's impairment or impairments in and of themselves are not "listed impairments" that are considered disabling per se, the Commissioner must also "consider the *combined effect* of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004) (emphasis added). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* However, to the extent that Plaintiff's arguments focus on the fact that he has several medical conditions, the mere existence or diagnosis of such impairments does not mean that the conditions were found to significantly impair his ability to engage in basic work activities. *See*

*Rouse v. Colvin*, No. 0:11-2636-MGL, 2013 WL 6050163, at *5 (D.S.C. Nov. 14, 2013). "A diagnosis alone does not establish disability; rather, a plaintiff must also show a 'related functional loss.'" *Id.* (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). "Thus, functional limitations—not diagnosis—are the focus in determining disability." *Id.*

Here, at Step Two the ALJ found that Plaintiff suffered from the severe impairments of disorder of the back and obesity. Tr. 11.  The ALJ also noted Plaintiff was assessed with severe sleep apnea in 2007 and had a bilateral septoplasty and turbinate reduction in 2008, but had not alleged that symptoms of sleep apnea affected his ability to work. The ALJ noted that Plaintiff's sleep apnea had "no more than minimal effect on his ability to perform basic work activities and is therefore considered a nonsevere impairment." Tr. 11-12. The ALJ also noted that although Plaintiff had "a history of substance abuse, he has reported that this condition is in remission and has not alleged a mental impairment in connection with this application." Tr. 12. Further noting a 2011 mental assessment, the ALJ found Plaintiff's history of substance abuse was a nonsevere impairment. Considering the combined effects of Plaintiff's severe and nonsevere impairments, the ALJ determined Plaintiff's impairments did not impose greater limitations than those inherent in the ALJ's RFC assessment. *Id.*

Plaintiff asserts that in his decision the ALJ did not "discuss or consider Plaintiff's right sided epicondylitis,[2] his rotator cuff tendonitis, his flat feet, his allergic rhinitis or his deviated septum." Pl.'s Br. 5. The Commissioner counters that Plaintiff had not previously brought these medical impairments to the ALJ's attention and "has failed to meet his burden of establishing that he had any functional limitations relating to these impairments." Def.'s Br. 9.

a.  Epicondylitis and Rotator Cuff Tendonitis

---

[2] Tennis elbow, or lateral epicondylitis, is a painful condition of the elbow caused by overuse. *See* http://orthoinfo.aaos.org/topic.cfm?topic=a00068 (last visited Nov. 5, 2014).

Plaintiff first contends that the ALJ did not discuss how "pain from his right sided epicondylitis and rotator cuff tendonitis when combined with the pain from his lower back limited Plaintiff's ability to function." *Id.* In his discussion of Plaintiff's RFC the ALJ noted that in a June 2011 consultative orthopedic examination Dr. Kerri Kolehma diagnosed Plaintiff as having "right sided lateral epicondylitis and mild rotator cuff tendonitis which should improve with ice and therapy." Tr. 16 (citing to Ex. 8F, at Tr. 635-38). The ALJ further noted Dr. Kolehma's findings that Plaintiff "was able to perform fine and gross movements with his upper extremities and should not limit the range in the right shoulder or he may develop a frozen shoulder" and that Plaintiff "should avoid lifting over 10 pounds above chest height with the right arm." *Id.* The ALJ concluded by noting that Dr. Kolehma's opinion, among others, supported his finding that Plaintiff "was able to perform at least a limited range of work at the sedentary level during the majority of the relevant period." Tr. 17.

Defendant argues that Plaintiff's assertions are undercut by the fact that he did not allege at the hearing or in his function report that he had any functional limitation related to his right upper extremity or that his ability to reach or use his hands was affected by any medical condition. Def.'s Br. 13. Defendant argues that there is no record evidence that supports a finding that Plaintiff "has a severe or ongoing elbow and shoulder impairment." Def.'s Br. 14. In his Reply, "Plaintiff submits that his right sided epicondylitis and mild rotator cuff tendonitis are additional impairments that impose limitations on his ability to work." Pl.'s Reply Br. 2, ECF No. 19. Plaintiff argues that it was error for the ALJ not to discuss what consideration he gave to the frequency and intensity of pain caused by Plaintiff's epicondylitis and tendonitis and if he had considered it the ALJ's RFC assessment "would have some limitations/restrictions on the use of Plaintiff's right upper extremity." *Id.*

The undersigned notes that it was Plaintiff's duty to introduce evidence of impairments. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting the claimant bears the burden of production and proof through the first four steps of the sequential analysis). Neither Plaintiff nor his counsel raised the possibility of a physical impairment due to right-sided epicondylitis or mild rotator cuff tendonitis as Plaintiff now suggests. The ALJ considered these diagnoses in his RFC and limited Plaintiff to sedentary[3] work and frequent reaching. Tr.12. Furthermore, Dr. Kolehma stated these impairments should improve with ice and therapy. Tr. 636. Although acknowledged by the ALJ, because neither Plaintiff's application for disability nor his testimony at the administrative hearing identifies these specific impairments as a reason for his inability to work the undersigned recommends a finding that the ALJ did not err in his consideration of Plaintiff's epicondylitis or tendonitis. *See Washington v. Astrue*, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) ("Plaintiff's medical records establish the existence of her impairment, but the current record contains no evidence of how it significantly limits her physical or mental ability to do basic work activities.").

### b.  Sleep apnea

Plaintiff asserts that the ALJ failed to "articulate how he considered Plaintiff's sleep apnea was effected by Plaintiff's obesity, his allergic rhinitis or his deviated septum." Pl.'s Br. 5. He also argues that although the ALJ found his sleep apnea to be a nonsevere impairment, the ALJ "did not discuss how Plaintiff's severe and chronic pain when combined with his obstructive sleep apnea affected Plaintiff's ability to sleep or his loss of energy." *Id.* Defendant asserts this argument is without merit because adding these new medical conditions "does not

---

[3] As the Commissioner noted in her brief, the regulations provide that sedentary work involves lifting no more than 10 pounds at a time. Def.'s Br. 13 (citing 20 C.F.R. §§ 404.1567(a), 416.967(a)).

change the fact that he has not established any functional limitations related to any of these conditions, either singly or in combination." Def.'s Br. 15.

The ALJ considered Plaintiff's nonsevere impairment of sleep apnea but also noted Plaintiff had not alleged that symptoms of sleep apnea affected his ability to work. Tr. 12. The ALJ also noted that as of July 2010, Plaintiff was "still not using the CPAP (Continuous positive airway pressure) machine nightly" and that Plaintiff cancelled a September 2010 appointment at the sleep apnea clinic. Tr. 11-12.

Plaintiff cites to medical records from the VA hospital that found Plaintiff could not tolerate CPAP treatment. Pl.'s Br. 4 (citing to Tr. 600, 605). These treatment notes dated December 20, 2007 and March 27, 2008 indicate in the HPI (history of present illness) that Plaintiff had a history of CPAP intolerance however Plaintiff reported he liked "his new nasal prong CPAP better, but still not using it every night." Tr. 600, 605.  The December 20, 2007 note indicates Plaintiff had "poor compliance with both CPAP and meds." Tr. 607.  The March 27, 2008 report also indicated "poor med and CPAP compliance." Tr. 601. Plaintiff also cites to a VA medical record that lists his allergic rhinitis, deviated septum, and GERD as ongoing medical problems. Pl.'s Br. 5. Plaintiff was assessed with allergic rhinitis and GERD on April 6, 2011, Tr. 488, however the undersigned notes that Plaintiff had surgery to repair his deviated septum on April 11, 2008, Tr. 575-91. In the August 16, 2010 treatment note cited by Plaintiff, the HPI indicates "poor CPAP compliance" and quotes Plaintiff's reasons for not using CPAP because "'it is uncomfortable having something on your face.'" Tr. 498. The treatment plan stressed smoking cessation and the importance of CPAP. Tr. 500.

As the Commissioner argues, Plaintiff has not met his burden of establishing he had functional limitations related to his allergic rhinitis, deviated septum, or GERD, or that Plaintiff was unable to tolerate CPAP treatment. In considering Plaintiff's impairment of sleep apnea, the

ALJ noted that Plaintiff had not alleged that symptoms of sleep apnea affected his ability to work. Tr. 12. Plaintiff asserts the ALJ did not consider his pain in combination with his sleep apnea. However, because Plaintiff's pain is attributed to his back disorder, which the ALJ found to be a severe impairment, the ALJ considered it in combination stating: "While the claimant has been assessed with a back disorder, obesity, sleep apnea, and a history of substance abuse, there is no indication in the record that the claimant's ability to sustain consistent function has been complicated by the combination of these impairments." Tr. 12. Accordingly, the undersigned recommends a finding that the ALJ did not err in his consideration of impairments with regard to Plaintiff's sleep apnea.

### c.  Flat feet

Plaintiff asserts that the medical records document Plaintiff's history of flat feet but the ALJ failed to discuss how "Plaintiff's obesity and chronic low back pain when combined with flat feet affected Plaintiff's ability to stand, walk or ambulate effectively." Pl.'s Br. 6. The VA treatment records cited by Plaintiff report as part of his previous medical history a diagnosis of flat feet reported on May 27, 2004. Tr. 498, 594, 600, 605. The Commissioner contends that because the ALJ limited Plaintiff to sedentary work with a sit/stand option, "to the extent that the Plaintiff's ability to stand and ambulate effectively was degraded by his flat feet, this limitation would be accounted for in the ALJ's RFC determination." Def.'s Br. 18. Again, as with the other medical conditions, Plaintiff has not articulated in his function reports or his testimony that his flat feet, in any way, impact his ability to work. Neither has Plaintiff identified any additional credible limitations stemming from this condition that were not included in the ALJ's RFC. The undersigned recommends a finding that any error by the ALJ in analyzing this condition was harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same

16

result notwithstanding his initial error"). A review of the ALJ's decision indicates the ALJ considered the combined effect of Plaintiff's impairments. Based on the foregoing, Plaintiff has not demonstrated that the ALJ's consideration of his impairments was unsupported by substantial evidence or controlled by an error of law.

2.     Opinions of Plaintiff's VE and Treating Physician

Plaintiff argues that the ALJ "failed to properly evaluate the opinions of Plaintiff's vocational expert and treating physician." Pl.'s Br. 6. The Commissioner contends the ALJ's evaluation was proper. Def.'s Br. 20.

a.   VE Jean R. Hutchinson

On July 16, 2010, vocational consultant Jean R. Hutchinson completed an Employability Evaluation of Plaintiff in which she described Plaintiff's work history, his injury/condition, and the DOT description of Plaintiff's PRW. Tr. 161-64. In her summary, Ms. Hutchinson noted that Plaintiff has "significant physical limitations" and cited to a March 25, 2010 Functional Capacity Evaluation ("FCE") and a March 30, 2010 office note of Dr. James Aymond. Tr. 166. Ms. Hutchinson opined that Plaintiff would be unable to perform his former work as a truck driver/warehouse worker, would be unable to return to any past employment, and lacked the transferable skills to perform other work within his RFC. *Id.* She further opined as follows:

> I am of the opinion that Mr. Brown is not able to engage in an eight-hour workday in a substantial number of jobs and cannot perform work tasks on a sustained basis. His impairments prevent him from making an adjustment to any work that exists in significant numbers in the national economy. With the restrictions placed on him by his treating physician, he is unable to meet all of the exertional requirements for sedentary work, the lightest exertional level of work. It is therefore concluded that Mr. Brown is and remains unemployable. He is unable to compete on the open job market and is unable to perform substantial gainful work activity.

*Id.*

The Social Security Regulations distinguish between opinions from "acceptable medical sources" and "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Social Security Ruling 06–03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical sources." 2006 WL 2329939 (Aug. 9, 2006). Only acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06–03p. However, medical sources who are not acceptable medical sources may provide opinions reflecting "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, and what the individual can still do despite the impairment(s), and physical or mental restrictions." SSR 06–03p. Social Security Ruling 06–03p further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939, at *6.

Here, the ALJ considered Ms. Hutchinson's evaluation and her reliance on a March 2010 FCE and Dr. Aymond's office note. Tr. 15. The ALJ noted that Ms. Hutchinson "additionally opined that the claimant was unable to engage in an eight-hour workday in a substantial number of jobs and could not perform work tasks on a sustained basis, without citing evidence supporting her opinion." *Id.* The ALJ found that Ms. Hutchinson's conclusion that Plaintiff was unable to perform substantial gainful activity was a determination reserved for the Commissioner and statements that a claimant is disabled or cannot work "are not given any special significance on the issue of disability." Tr. 15. The ALJ accorded little weight to the remainder of Ms.

Hutchinson's opinion finding it "generally inconsistent with the evidence of record, including the limitations imposed by the claimant's treating physicians." *Id.*

Plaintiff argues that the "evidence of record does not support the reasons the [ALJ] set out for not giving proper weight to Ms. Hutchinson's expert vocational opinions" and her evaluation summary clearly sets out the basis for her opinions. Pl.'s Br. 7. The Commissioner asserts that while Ms. Hutchinson referenced various medical records as part of her report, "she nevertheless failed to cite any evidence supporting her opinion" and the sources she cited "reached markedly different conclusions." Def.'s Br. 20. The Commissioner also notes that "as a vocational expert, Ms. Hutchinson is not qualified to render an opinion as to the Plaintiff's residual functional capacity." *Id.* at 22.

Under the Social Security Regulations, Ms. Hutchinson is not an acceptable medical source for assessing Plaintiff's physical impairments. *See* 20 C.F.R. §§ 404.1513, 416.913. As noted by the ALJ, her opinion regarding Plaintiff's disability is a determination reserved to the Commissioner and therefore it is not entitled to "controlling weight or special significance." SSR 96–2p, SSR 96–5p. The ALJ's decision shows that he evaluated Ms. Hutchinson's opinion and the reasons for giving it "little weight." The ALJ's determination is supported by substantial evidence.

### b.  Dr. James K. Aymond, Orthopaedic Specialists of Charleston

Citing to one treatment note of Dr. Aymond, Plaintiff argues the ALJ "did not properly weigh the opinions of Dr. Aymonds (sic) and failed to articulate any persuasive reason for not giving the treating physician's opinion proper weight." Pl.'s Br. 8 (citing to Tr. 435).

Dr. Aymond's March 30, 2010 treatment note is as follows:

Mr. Brown is seen in followup with the functional capacity evaluation performed 5 days ago. The patient was able to reproduce light to medium physical demand category work with no lifting greater than 25 pounds. He was also found to have a

70% validity pass rate with only 1/5 Waddell scores being positive. This was considered a valid test.

I have reviewed the findings with Mr. Brown. He should be capable of gainful employment with avoiding prolonged sitting as well as avoiding repetitive bending and twisting and keeping his lifting to less than 25 pounds. He will continue to have intermittent lumbar pain, but there is unfortunately nothing other than medications that will be helpful for Mr. Brown in the future. At this time, I would estimate his impairment to be 23% impairment of the whole person, which is equal to 30.6% impairment of the lumbar spine. The patient is released at this time and will require medication from time to time otherwise.

Tr. 435.

If a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); 20 C.F.R. § 404.1527(c). The rationale for the general rule affording opinions of

treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro*, 270 F.3d at 176. Social Security Ruling 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence.

The ALJ considered and discussed Dr. Aymond's treatment notes and opinions from 2009 and 2010. Tr. 15. Specifically the ALJ noted Dr. Aymond's March 2010 opinion:

> Dr. Aymond opined that the claimant should be capable of gainful employment with the following restrictions: to avoid prolonged sitting; to avoid repetitive bending and twisting; and to limit lifting to less than 25 pounds. Dr. Aymond noted that the claimant would continue to experience intermittent lumbar pain and released him from care. Although there were periods during which the claimant was medically restricted from working, generally immediately following his surgeries, Dr. Aymond's treatment notes reflect that the claimant was able to perform at least sedentary work during most of the relevant period.

Tr. 15 (citation to record exhibit omitted). The ALJ further referenced Dr. Aymond's treatment notes from October 2010 in which Dr. Aymond "noted that the claimant had reached maximum medical improvement with respect to his lower back from an orthopedic standpoint, and that his impairment had not changed since March 2010." *Id.* In the conclusion of his RFC assessment, the ALJ noted that "Dr. Aymond's treatment notes and opinions over time" along with other

opinions supported the ALJ's finding that Plaintiff "was able to perform at least a limited range of work at the sedentary level during the majority of the relevant period." Tr. 17.

Plaintiff argues that "[b]y not including limits on repetitive bending or twisting or limits from the continuing use of pain medications and their side effects on a sustained basis in his [RFC] finding, the [ALJ] failed to give proper weight to the treating physician's opinions. Neither did the [ALJ] articulate any persuasive reasons for not doing so." Pl.'s Br. 9.   The Commissioner counters that "[a]lthough the ALJ did not specifically include Dr. Aymond's limitations of no repetitive bending or twisting, he did limit the Plaintiff to work at the sedentary level." Def.'s Br. 22. The Commissioner further notes that "non-exertional limitations such as bending and squatting will not significantly erode a claimant's ability to do the full range of sedentary work." *Id.* at 23 (citing *Washington v. Astrue*, 698 F. Supp. 2d at 584 n.20; *Hairston v. Astrue*, No. 6:11-cv-00057, 2013 WL 5151036, at *16 (W.D. Va. Sept. 13, 2013); *Carey v. Commissioner*, Civil No. SAG-12-3583, 2013 WL 4804734, at *2 (D. Md. Sept. 6, 2013)). The Commissioner further argues that any alleged errors in determining the RFC were cured because the ALJ allowed Plaintiff to question the vocational expert about any limitations that could be included in the RFC. *Id.*

"Although an ALJ is required by Social Security regulations to assign weight to all medical opinions, *see* 20 C.F.R. § 416.927(e)(2)(ii), an ALJ's failure to expressly state the weight given to a medical opinion may be harmless error when the opinion is consistent with the ALJ's RFC determination." *Davis v. Colvin*, No. 12–2244–CMC–BM, 2014 WL 172513, at *2 (D.S.C. Jan.15, 2014) (citing *Morgan v. Barnhart*, 142 F. App'x 716, 722-23 (4th Cir. 2005) (holding that any error in failing to credit a medical opinion was harmless where the ALJ incorporated results of functional capacity exam, which was consistent with medical opinion, into plaintiff's RFC); *Rivera v. Colvin*, No. 5:11-CV569-FL, 2013 WL 2433515 (E.D.N.C. June

4, 2013) ("ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion is not relevant to the disability determination or when it is consistent with the ALJ's RFC determination.")). Even though the ALJ erred by not specifying the weight assigned to Dr. Aymond's opinion, that error was harmless because his opinion is consistent with the ALJ's RFC determination. *Davis v. Colvin*, at *2. Furthermore, to the extent the ALJ did not specifically list all of the non-exertional limitations cited by Dr. Aymond, that error is also harmless because those limitations would not significantly erode the job base at the sedentary level.

### 3.     Compliance with Social Security Ruling 00-4p

Plaintiff's final allegation of error is that although the ALJ complied with the requirements of SSR 00-4p with regard to the sit/stand option in the RFC assessment, the provision that "Plaintiff be allowed to be off tasks 10% of a workday is a limitation or restriction that is not consistent with the DOT and also requires compliance with SSR 00-4p." Pl.'s Br. 9. The Commissioner asserts that Plaintiff misconstrued the ALJ's reference to being off task ten percent and that it was part of the sit/stand limitation and not an independent or additional limitation. Def.'s Br. 25. Defendant further asserts that, even assuming Plaintiff's interpretation was correct, there was no conflict with the DOT requiring resolution. *Id.* at 25-26.

Social Security Ruling 00-4p provides:

Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

2000 WL 1898704, at *2 (Dec. 4, 2000).

In his RFC assessment, the ALJ determined Plaintiff "must be allowed to sit or stand alternatively at will, but will not be off task for more than 10% of the workday." Tr. 12. At the hearing, the ALJ clarified that in both hypotheticals he posed to the VE the sit/stand option meant "allowing the person to sit or stand alternatively at will, provided the person is not off-task more than 10 percent of the workday." Tr. 44. The undersigned agrees with the Commissioner that the 10 percent limitation is not an additional finding as Plaintiff alleges, but is part of the definition for the ALJ's sit/stand option. As such, there is no error or conflict with SSR 00-4p.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's physical condition, and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

November 14, 2014                                    Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**